**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>STATE OF NEW MEXICO; NEW MEXICO HIGHER EDUCATION DEPARTMENT; and STEPHANIE RODRIGUEZ, in her official capacity as Secretary of New Mexico Higher Education Department,<br><br>Defendants. | Civil No. 26-cv-2827<br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. Federal law prohibits illegal aliens from being eligible to receive postsecondary education benefits based on residence within a state if such benefits are denied to U.S. citizens residing in other states. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet, New Mexico has ignored this Congressional prohibition for over two decades.

2. In 2005, New Mexico passed Senate Bill 582 ("SB 582"), which extends eligibility for New Mexico in-state tuition benefits and financial aid to illegal aliens, including grants and scholarships. SB 582 is codified in N.M. Stat. Ann. § 21-1-4.6 (2026).

3. Pursuant to SB 582, the New Mexico Higher Education Department promulgated what is referred to as the "Nondiscrimination principle," which provides that "any tuition or state-funded financial aid that is granted to residents of New Mexico shall also be granted" to illegal

aliens who have attended high school in New Mexico for at least one year and attained graduation or equivalent status. N.M. Admin Code § 5.7.18.10(K) (2026).

4. SB 582 and the "Nondiscrimination principle" extend eligibility for in-state tuition benefits and financial aid at New Mexico colleges to illegal aliens, while denying those benefits to U.S. citizens from other states.

5. This is the opposite of "nondiscrimination"; it is blatant unequal treatment favoring illegal aliens over U.S. citizens. Such preferential treatment is squarely prohibited and preempted by federal law mandating that "an alien who is not lawfully present in the United States *shall not* be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of the Constitution, New Mexico's statutory and regulatory extensions of eligibility for postsecondary education benefits to illegal aliens are unconstitutional and must yield to federal law.

6. Courts have long recognized 8 U.S.C. § 1623's express preemptive effect. *See, e.g., Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (holding that Section 1623 "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens cannot be eligible"); *Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a), "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781,

2019 WL 5801690, at *8 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

7. Numerous courts have struck down similar in-state tuition laws as unconstitutional based on Section 1623's preemptive effect. *See, e.g.*, *United States v. Illinois*, No. 25-CV-1691, 2026 WL 2137256, at *8–11 (S.D. Ill. July 24, 2026) (finding Illinois in-state tuition statutes as applied to illegal aliens expressly preempted by Section 1623(a)); *United States v. Nebraska*, --- F.Supp.3d ---, No. 8:26-CV-172, 2026 WL 1584862 *27 (D. Neb. June 3, 2026) (holding Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states'"); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment) (holding that challenged Oklahoma in-state tuition laws "as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid"); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause); *see also United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026) (holding Kentucky regulation violated 8 U.S.C. § 1621(d) because it was a regulation, not an enacted State law as required by Section 1621(d)). This Court should do the same.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345.

9. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because: (1) all Defendants reside in this judicial district; and (2) a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

10. The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, 2202; and the Court's inherent equitable powers.

## PARTIES

11. Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, and statutory authorities. Plaintiff enforces federal immigration laws through its Executive agencies, including the Department of Homeland Security ("DHS") and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

12. Defendant State of New Mexico is a state of the United States.

13. Defendant New Mexico Higher Education Department is the executive branch agency of the state of New Mexico responsible for defining the mission of and coordinating the state's system of public higher education and its institutions, including relevant grants and scholarships. *See* N.M. Stat. Ann. §§ 21-1-4(G), 21-1-26; *see also* N.M. Admin. Code § 5.7.18.12(A). The New Mexico Higher Education Department "receive[s], adjust[s,] and approve[s] the budgets submitted by these institutions[,]" N.M. Stat. Ann. § 21-1-26(A)(2), and

"define[s] resident and nonresident students for the purpose of administering tuition charges[.]" *id.* § 21-1-4(G).

14. Defendant Stephanie Rodriguez is the Secretary of New Mexico Higher Education Department.[1] She "is the administrative head of the department and serves as the State Higher Education Executive Officer (SHEEO) and is responsible to the Governor for operating the department and administering and enforcing the laws with which the secretary or the department is charged."[2] She is sued in her official capacity.

**FEDERAL LAW**

15. The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

16. The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1, and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, which necessarily includes his duty to take care over immigration matters.

17. The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from its inherent obligations as a sovereign, the Constitution, and numerous acts of Congress. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of

---

[1] New Mexico Higher Education Department, *Cabinet Secretary*, https://perma.cc/L7GU-WCVF.
[2] New Mexico Higher Education Department, *About*, https://perma.cc/D4RH-KSYR.

every sovereign and independent nation, essential to its safety, its independence, and its welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

18. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining that matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

19. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Those Acts sought to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id.*; *see also* 8 U.S.C. § 1601(1)

("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

20. Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs but rather [should] rely on their own capabilities and the resources of their families, their sponsors, and private organizations." *Id.* § 1601(2)(A).

21. Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B).

22. Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5)-(6).

23. As relevant here, PRWORA provides: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

24. But even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623(a). IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." *Id.*

25. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a

> political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

26. Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are also offered to all American citizens, regardless of their state of residence.

27. On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[3] ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id*. § 2(a).

28. On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[4] directing relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." *Id*. § 5.

29. These Executive Orders emphasize that state governments must not confer greater benefits to illegal aliens present in our Nation than to U.S. citizens. They also reflect Congress's

---

[3] Exec. Order No. 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), https://perma.cc/N84X-CVZZ.

[4] Exec. Order No. 14287, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), https://perma.cc/9X3X-V7F7.

end—expressed in multiple provisions of the Immigration and Nationality Act—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for U.S. citizens.

## NEW MEXICO LAWS

### I. New Mexico Makes Illegal Aliens Eligible for Resident Tuition

30. New Mexico rewards an illegal alien with eligibility for in-state tuition, based on residency within New Mexico, while explicitly denying eligibility for resident tuition rates to U.S. citizens who are not New Mexico residents. *See* N.M. Stat. Ann. §§ 21-1-2(A)(1)-(3), 21-1-4.6(B); N.M. Admin. Code §§ 5.7.18.7(H), .8-.9(A), 5.7.18.10(K).

31. N.M. Stat. Ann. § 21-1-2(A)(1)-(3) authorizes public universities to charge "each student who is a resident of New Mexico" lower "matriculation fees" and "tuition fees" than "each student who is not a resident of New Mexico."

32. The boards of regents of each state educational institution have the authority under New Mexico law to set "matriculation fees and tuition fees." N.M. Stat. Ann. §§ 21-1-2(F), 21-1-4(A), 21-3-7.

33. New Mexico, like most states, charges two separate tuition rates at its state educational institutions: resident and nonresident tuition. *See id.* § 21-1-2(A)(1)-(3).[5]

[5] New Mexico's constitution and statutes define public universities, colleges, and community colleges as "state educational institutions." N.M. Const. art. XII, § 11; *see also* N.M. Stat. Ann. § 21-1-4(A).

34. For example, the University of New Mexico charges New Mexico residents approximately $11,585 for tuition and fees for one academic year but charges non-New Mexico residents approximately $34,734 for the same.[6]

35. Similarly, the New Mexico Institute of Mining and Technology (New Mexico Tech) charges New Mexico residents approximately $10,084 for one year of tuition and fees but charges out-of-state students approximately $31,655 for the same.[7]

36. The same structure of substantially less-expensive in-state tuition for those classified as New Mexico residents as compared to nonresidents holds across other New Mexico state postsecondary educational institutions,[8] including community colleges.[9]

37. Since 2005, SB 582 has rewarded illegal aliens with eligibility for in-state tuition benefits in New Mexico while denying that same benefit to U.S. citizens who are not residents of New Mexico. N.M. Stat. Ann. § 21-1-4.6.

38. In 2007, the New Mexico Higher Education Department promulgated what it came to refer to as SB 582's "Nondiscrimination principle," implementing SB 582's mandate. N.M. Admin. Code § 5.7.18.10(K).

39. SB 582 and N.M. Admin. Code § 5.7.18.10(K) unequivocally make illegal aliens living in New Mexico eligible to receive resident tuition in New Mexico.

---

[6] University of New Mexico, *Cost of Attendance*, https://perma.cc/U9LZ-26TF.

[7] New Mexico Tech, *Tuition and Fees*, https://nmt.edu/finaid/tuition.php.

[8] *See, e.g.*, New Mexico Highlands University, *Tuition and Fees*, https://perma.cc/F2Q4-DQ7S; Western New Mexico University, *Tuition & Fees*, https://perma.cc/QBP9-5WTR.

[9] *See, e.g.*, Central New Mexico Community College, *Understanding Tuition Rates and Residency*, https://perma.cc/687E-MR6Q; Santa Fe Community College, *Tuition and Fees for Credit Enrollment*, https://perma.cc/MN22-5CKL.

40. Under SB 582:

> Any tuition rate or state-funded financial aid that is granted to residents of New Mexico shall also be granted on the same terms to all persons, *regardless of immigration status*, who have attended a secondary educational institution in New Mexico for at least one year and who have either graduated from a New Mexico high school or received a high school equivalency credential in New Mexico.

N.M. Stat. Ann. § 21-1-4.6(B) (emphasis added).

41. The implementing regulation repeats this statutory language, "[n]otwithstanding the provisions of Subsection H of 5.7.18.7 NMAC[.]"[10] *See* N.M. Admin Code § 5.7.18.10(K). If a student has met this requirement, "the student shall continue to be considered a non-resident for reporting purposes but will receive the benefit of the in-state tuition rates." *Id.* § 5.7.18.10.

42. Nothing in either provision requires lawful presence in the United States for in-state tuition eligibility.

43. High school attendance within New Mexico is a proxy for residence within New Mexico. *See* N.M. Stat. Ann. § 22-1-4A ("[A] free public high school education shall be available to any school-age person *who is a resident of this state*.") (emphasis added).

44. Accordingly, the tuition rate for illegal aliens in New Mexico who satisfy SB 582's criteria is the same as the tuition rate for other New Mexico residents. Conversely, a U.S. citizen who is not eligible for in-state tuition due to residency requirements, *see* N.M. Admin. Code. §§ 5.7.18.7, .9, is required to pay higher, nonresident tuition.

---

[10] "New Mexico resident for tuition purposes" means a U.S. citizen or permanent resident who has satisfied the requirements in N.M. Admin. Code § 5.7.18.9. *See* N.M. Admin Code § 5.7.18.7(H).

## II. New Mexico Makes Illegal Aliens Eligible for Scholarships and Financial Assistance on the Basis of Residence

45. New Mexico law, through SB 582 and its implementing regulation, also rewards illegal aliens with eligibility for state-funded scholarships and other financial assistance based on residency within New Mexico while explicitly denying eligibility for the same to U.S. citizens who are not New Mexico residents.

46. Eligibility for New Mexico state financial aid programs is based on the same residency requirements that New Mexico uses to make illegal aliens eligible for in-state tuition. *See* N.M. Stat. Ann. § 21-1-4.6(B); N.M. Admin. Code §§ 5.7.18.7(H), .8-.9, .10(K). As noted above, high school attendance within New Mexico is a proxy for residence within New Mexico. *See* N.M. Stat § 22-1-4(A). ("[A] free public high school education shall be available to any school-age person *who is a resident of this state*.") (emphasis added).

47. Nothing in SB 582 or its implementing regulation requires lawful presence in the United States to be eligible for state-funded financial aid, including scholarships.[11]

48. The Federal Free Application for Federal Student Aid ("FAFSA") is an application form used to determine students' eligibility for financial assistance for higher education, including federal grants. Federal student aid, however, is not available to illegal aliens.[12]

49. As an alternative to FAFSA, New Mexico universities have operated their own financial aid programs specifically set up to encourage and facilitate applications for state financial aid from students who are ineligible to complete FAFSA. For example, the University of New

---

[11] The New Mexico Higher Education Department's regulation clarifies that certain "[s]tate-funded financial aid programs with an employment component" may independently "require U.S. citizenship or eligible non-citizen status." N.M. Admin. Code § 5.7.18.10(K).

[12] Federal Student Aid, *Undocumented Students and Financial Aid*, https://perma.cc/8ALR-JF54.

Mexico's "UNM Application for State Aid" provides financial aid "for admitted students who are non-citizens" because "[i]n 2005, the State of New Mexico . . . prohibit[ed] the denial of admission or eligibility for education benefits based on immigration status."[13]

50. Because of SB 582 and its implementing regulation, each residency-based scholarship and grant established by the New Mexico Higher Education Department is available to illegal alien students and unavailable to citizens who are not residents of New Mexico.[14]

51. For example, the "Opportunity Scholarship" and the "Lottery Scholarship" are available to illegal aliens who "are granted the nondiscrimination waiver[,]"[15] which requires "attend[ing] high school in New Mexico for at least one year and . . . graduat[ing] from a New Mexico high school or receiv[ing] a high school equivalency credential while living in New Mexico."[16]

52. Thus, through SB 582 and its implementing regulation, illegal aliens residing in New Mexico are eligible for financial aid so long as they satisfy New Mexico residency requirements, while U.S. citizens residing outside New Mexico are not eligible.

---

[13] University of New Mexico, *UNM Application for State Aid*, https://perma.cc/2MJE-8385; *see also, e.g.*, New Mexico State University, *Scholar Dollar$*, https://perma.cc/VQ38-59Z7 ("Scholar Dollar$ is the singular application used by students and staff at New Mexico State University for processing, awarding, and applying for scholarships.").

[14] *See* New Mexico Higher Education Department, *Residency Requirements*, https://hed.nm.gov/financial-aid/residency-requirements.

[15] *See, e.g.*, Western New Mexico University, *Grants and State Scholarships*, https://perma.cc/5GWH-VJEF (advertising the New Mexico Lottery Scholarship); Northern New Mexico College, *Scholarships*, https://perma.cc/RS2R-FPR7 (same, as well as the Opportunity Scholarship).

[16] Reach Higher New Mexico, *Frequently asked questions about the Opportunity and Lottery Scholarships*, "I am not a U.S. citizen. Can I still receive New Mexico state scholarships?", https://perma.cc/SVF6-GPTS.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION OF N.M. STAT. ANN. § 21-1-4.6(B) – TUITION)

53. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

54. The Supremacy Clause of our Nation's Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

55. The preemption doctrine is derived from the Supremacy Clause. Express preemption occurs when Congress includes express language within the statute indicating its preemptive intent. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

56. N.M. Stat. Ann. § 21-1-4.6(B) extends eligibility for in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

57. Accordingly, the challenged provision, N.M. Stat. Ann. § 21-1-4.6(B), is expressly preempted and unconstitutional.

**COUNT II**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.M. ADMIN. CODE § 5.7.18.10(K) – TUITION)**

58. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

59. The "Nondiscrimination principle," N.M. Admin. Code § 5.7.18.10(K), extends in-state tuition benefits to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits (lower, resident tuition rates) based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

60. Accordingly, the challenged regulation, N.M. Admin. Code. § 5.7.18.10(K), is expressly preempted and unconstitutional.

**COUNT III**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.M. STAT. ANN. § 21-1-4.6(B) – FINANCIAL ASSISTANCE)**

61. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

62. N.M. Stat. Ann. § 21-1-4.6(B) extends eligibility for state-funded financial aid, including scholarships and grants, to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

63. Accordingly, the challenged provision, N.M. Stat. Ann. § 21-1-4.6(B), is expressly preempted and unconstitutional.

**COUNT IV**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.M. ADMIN. CODE § 5.7.18.10(K) – FINANCIAL ASSISTANCE)**

64. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

65. The "Nondiscrimination principle," N.M. Admin. Code § 5.7.18.10(K), extends eligibility for state-funded financial aid, including scholarships and grants, to illegal aliens contrary to Congress's prohibition on providing eligibility for postsecondary education benefits based on residency to illegal aliens present in the United States that are not available to all U.S. citizens regardless of residency. *See* 8 U.S.C. § 1623(a).

66. Accordingly, the challenged regulation, N.M. Admin. Code. § 5.7.18.10(K), is expressly preempted and unconstitutional.

**COUNT V**
**VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION OF N.M. ADMIN. CODE § 5.7.18.10(K) – GRANTING OF BENEFITS WITHOUT ENACTED STATE STATUTE)**

67. The United States hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

68. To the extent its promulgation was independent of the passage of SB 582, the "Nondiscrimination principle," N.M. Admin. Code § 5.7.18.10(K), directly conflicts with Congress's determination that states "may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . *only through the enactment of a State law*." 8 U.S.C. § 1621(d) (emphasis added).

69. Accordingly, the challenged regulation, N.M. Admin. Code § 5.7.18.10(K), is expressly preempted and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring N.M. Stat. Ann. § 21-1-4.6(B) and N.M. Admin. Code § 5.7.18.10(K) violate the Supremacy Clause because they extend eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law, and are therefore unconstitutional and preempted;

2. That this Court enter a judgment declaring that N.M. Admin. Code § 5.7.18.10(K) violates the Supremacy Clause to the extent it purports to extend eligibility for postsecondary education benefits to illegal aliens via regulation as opposed to enacted State law;

3. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing N.M. Stat. Ann. § 21-1-4.6(B) and N.M. Admin. Code § 5.7.18.10(K) or any similar subsequent statute or regulation, because they extend eligibility for postsecondary education benefits to illegal aliens but not nonresident U.S. citizens through State law;

4. That this Court issue a permanent injunction that prohibits Defendants as well as their successors, agents, and employees, from enforcing N.M. Admin. Code § 5.7.18.10(K) to the extent it purports to extend eligibility for postsecondary education benefits to illegal aliens via regulation as opposed to enacted State law;

5. That this Court award the United States its costs and fees in this action; and

6. That this Court award any other relief it deems just and proper.

DATED: August 27, 2026

RYAN ELLISON
First Assistant United States Attorney
District of New Mexico

EMIL J. KIEHNE
Assistant United States Attorney
U.S. Attorney's Office
District of New Mexico
201 3rd Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
Emil.Kiehne@usdoj.gov

Respectfully Submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA L. EDWARDS
Counsel to the Associate Attorney General

JACQUELINE COLEMAN SNEAD
Deputy Director
Enforcement & Affirmative Litigation Branch

*/s/ Pooja D. Majmundar*
POOJA D. MAJMUNDAR
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 598-0280
Pooja.D.Majmundar@usdoj.gov

*Attorneys for the United States of America*