**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

STATE OF NEW MEXICO; NEW MEXICO HIGHER EDUCATION DEPARTMENT; and STEPHANIE RODRIGUEZ, *in her official capacity as Secretary of the New Mexico Higher Education Department,*

*Defendants.*

Case No.: 1:26-cv-02827-SMD-SCY

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)**

Defendants the State of New Mexico, New Mexico Higher Education Department, and Secretary Stephanie Rodriguez, respectfully move this Court to dismiss Plaintiff the United States's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) as set forth below.[1]

## INTRODUCTION

"Today, education is perhaps the most important function of state and local governments." *Brown v. Board of Education*, 347 U.S. 483, 493 (1954). The State of New Mexico realizes this responsibility by subsidizing tuition and providing financial assistance to students at its public colleges and universities. Section 21-1-4.6(B) provides that any tuition rate or state-funded aid "granted to residents of New Mexico shall also be granted on the same terms" to anyone who attended a New Mexico secondary school for at least one year and either graduated from a New Mexico high school or received a high school equivalency certificate in New Mexico. N.M. Stat. Ann. § 21-1-4.6(B) (2026) ("SB 582" or "educational attainment pathway"); S.B. 582, 47th Leg., Reg. Sess. (N.M. 2005). The reference to residents identifies the benefit, not the eligibility criterion. It describes only what an attainment-eligible student receives, namely the resident rate and resident-eligible aid. This pathway to state educational benefits turns on where a student went to school, not where the student lives, and applies regardless of immigration status. Thus, this educational attainment pathway is open to, for instance, U.S. citizens who attended boarding school in New Mexico but are not "residents" under state law. And, embodying the idea that

[1] Consistent with Local Rule 7.1(a), counsel for Defendants and counsel for Plaintiff United States of America have conferred, agreed to file cross-dispositive motions, and, as such, have confirmed the motion is opposed.

"imposing [educational] disabilities on the minor *children* of . . . illegal entrants" does "not comport with fundamental conceptions of justice," the educational attainment pathway also provides these benefits to immigrants not lawfully present in the United States if they graduated high school in New Mexico. *Plyler v. Doe*, 457 U.S. 202, 220 (1982).

Plaintiff, the United States, challenges SB 582, arguing it is preempted by 8 U.S.C. § 1623, a federal law that governs when states can provide in-state tuition benefits to immigrants not lawfully present. Section 1623 *allows* states to provide educational benefits to unlawfully present noncitizens, so long as in-state residency is not the basis for eligibility.

Plaintiff is wrong. SB 582 is a pathway to in-state tuition benefits and financial assistance that is based on educational attainment, not residency, and therefore not preempted by § 1623. A classification based on where someone went to high school is a legally distinct and substantively different category than a classification based on residence in New Mexico. Congress did not restrict state legislatures from granting in-state tuition and financial assistance based on educational attainment. Moreover, § 1623 is an unconstitutional piece of legislation that unlawfully commandeers state legislatures, so it cannot preempt New Mexico law. The Court should dismiss Plaintiff's complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Federal Laws on Eligibility for Educational Benefits

Three decades ago, Congress passed two laws concerning states' provision of public benefits to undocumented immigrants (together, "federal eligibility laws"). Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009 (1996); Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. No. 104-193,

110 Stat. 2105 (1996). The federal eligibility laws explained that, as a starting point, immigrants not lawfully present in the United States are ineligible for most state-provided public benefits. 8 U.S.C. § 1621(a). But a starting point is just a starting point.

The statutes make clear that states *can* provide public benefits to immigrants not lawfully present, they simply needed to do so affirmatively after the passage of the federal eligibility laws. States "may provide" that persons not lawfully present are "eligible for any State or local public benefit . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." § 1621(d). The federal eligibility laws provided a reset, not an ongoing ban: as of 1996, then-effective state laws providing public benefits to immigrants not lawfully present were invalid. After August 1996, states were free to reenact their laws or enact new laws providing public benefits to immigrants not lawfully present.

Beyond passing new legislation, the federal eligibility laws set forth the following guidelines when offering tuition discounts and financial assistance to immigrants not lawfully present in the United States:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

§ 1623. "Residence" is a defined term, meaning a person's "place of general abode" or "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33).

To break it down: States are free to provide discounted tuition rates and financial assistance to students not lawfully present "on the basis" of attributes other than residency.

§ 1623. As Plaintiff construes § 1623, *if* a state decides to make immigrants not lawfully present eligible for a tuition rate "on the basis" of their residence (principal, actual dwelling place in fact) within a state, to avoid preemption, the statute must also provide that tuition rate to "a citizen or national of the United States" without regard to their residence. *Id.*

**B. New Mexico's Two Pathways to Tuition Benefits**

New Mexico, like every other state, provides discounted tuition to some students at public colleges and universities. Students who qualify as residents under state law can utilize the "state residency pathway" to qualify for in-state tuition and financial aid, others can utilize the more limited "educational attainment pathway."

Under the residency pathway, New Mexico provides in-state tuition and financial aid (together, "in-state financial benefits") to students who are New Mexico residents. N.M. Code R. § 5.7.18.9. Under state law, New Mexico residency is carefully circumscribed: A person must (1) have physically resided in New Mexico for twelve months prior to starting school; (2) have parents who are residents or be financially independent; (3) declare their intent to be a resident of New Mexico; and (4) provide evidence of two overt acts demonstrating residency (voter registration, driver's license, utility bills, etc.). § 5.7.18.9(A)–(D); § 5.7.18.9(E) (exceptions, such as for military service).

Only persons who are United States Citizens or lawful permanent residents qualify as New Mexico residents under state law. N.M. Code R. § 5.7.18.7(H). So, immigrants who are not lawfully present can never be New Mexico residents and cannot receive in-state tuition on the basis of residency. But these immigrants can still receive in-state financial benefits at state universities under the educational attainment pathway.

With the federal eligibility statutes in mind, in 2005, New Mexico crafted its laws to permit students who graduated high school in New Mexico, regardless of their immigration status or residency, to receive the same in-state financial benefits that New Mexico residents receive. § 21-1-4.6; N.M. Code R. § 5.7.18.10(K).[2] This educational attainment pathway permits "all persons, regardless of immigration status, who have attended a secondary educational institution in New Mexico for at least one year and who have either graduated from a New Mexico high school or received a high school equivalency credential in New Mexico" to receive a tuition rate equal to in-state tuition and state-funded financial aid. § 21-1-4.6(B). Of course, this means that persons who are not lawfully present can receive the same tuition rate as New Mexico residents: but based solely on the location of their educational attainment, not their residency.

SB 582 provides an alternative pathway to in-state financial benefits for students, immigrant and non-immigrant alike, who do not qualify as New Mexico residents. For example, a student whose parents changed jobs during their junior year of high school, moved from Dallas to Albuquerque, and graduated from Highland High School could qualify under the educational attainment pathway. This student was not present in New Mexico for three years, and so would not be considered a New Mexico resident.

The educational attainment pathway is just one of several alternative pathways for students who do not qualify as New Mexico residents to receive in-state financial benefits. Members of New Mexico's federally recognized tribes can receive in-state tuition regardless of residence.

[2] In referring to "SB 582" or the "educational attainment pathway" in this brief, Defendants refer to both § 21-1-4.6 and § 5.7.18.10(K). The regulation parrots the statute, and Plaintiff has yet to argue there is any significant difference between the two. *Cf.* Compl. ¶ 68.

§ 5.7.18.10(A). Athletes, competitive scholarship candidates, and others also qualify regardless of residence. § 5.7.18.10(H), (I). Under these pathways and the educational attainment pathway, students "shall continue to be considered a non-resident for reporting purposes" but can still receive the same in-state tuition rate, financial aid, or both. § 5.7.18.10.

**C. Plaintiff's Allegations**

The instant action is one of many similar suits brought by the United States challenging state laws that provide educational assistance to students without lawful status. Plaintiff recycles claims from those actions here, arguing the educational attainment pathway is preempted because it provides in-state tuition and financial assistance to immigrants not lawfully present. Complaint, ECF No. 1. The complaint challenges the in-state tuition and financial assistance components of both New Mexico's statute, § 21-1-4.6, and regulation, § 5.7.18.10(K), that enable the educational attainment pathway. Compl. ¶¶ 53–66. It separately challenges the regulation, arguing that it is not an "enact[ed] . . . state law." Compl. ¶ 68 (citing § 1621(d)). The complaint does not state a claim and should be dismissed.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court must view the "well-pleaded facts as true," it "must disregard conclusory allegations." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144–45 (10th Cir. 2023) (citation modified). Likewise, courts "don't accept the nonmoving party's legal conclusions as true" on a motion to dismiss. *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016). Whether federal law preempts a given state statute is a legal question that can be resolved on a

motion to dismiss under Rule 12(b)(6). *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1160 (D.N.M. 2024); *see also United States v. Walz*, 825 F. Supp. 3d 897, 900, 912 (D. Minn. 2026).

## III. ARGUMENT

Section 1623(a) does not preempt New Mexico's educational attainment pathway for two reasons. First, the benefit is not granted "on the basis of residence." Eligibility turns on where a student attended and finished high school, not on residence. Second, even if this pathway were considered residence-based, nonresident U.S. citizens who meet the high school attendance and graduation criteria receive the same benefit as any unlawfully present students who meet the criteria. If anything, § 1623 unconstitutionally commandeers the State. Any one of these arguments is sufficient to dismiss Plaintiff's Complaint in its entirety and with prejudice.

### A. Federal law does not preempt New Mexico's educational attainment pathway.

Plaintiff argues that § 1623 expressly preempts state laws that provide in-state tuition and financial assistance to undocumented immigrants on the basis of residence. New Mexico's laws and regulations do not provide financial benefits to undocumented immigrants on the basis of residence. There is no preemption as a matter of law and of fact. This Court should dismiss the United States' complaint for failure to state a claim upon which relief can be granted.

The Supremacy Clause permits Congress, when it speaks clearly, to preempt state law. U.S. Const. art. VI, cl. 2. This is a case about express preemption, a flavor of preemption that "occurs when Congress defines explicitly the extent to which its enactments preempt state law." *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1021 (10th Cir. 2022) (citation modified); Compl. ¶¶ 55, 57, 60, 63, 66, 69 (alleging only express preemption). Express preemption cases are standard exercises

in statutory interpretation. Courts "focus on the plain wording of the [preemptive] clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-free Tr.*, 579 U.S. 115, 125 (2016) (citation modified). So, the preemption inquiry "begins with the language of the statute itself," and if "the statute's language is plain," that "is also where the inquiry should end." *Id.* (citation modified)

Although Congress enjoys the power to preempt, preemption is not automatic. Preemption is based on "the plain language of the . . . preemption provision." *Thornton*, 28 F.4th at 1023–24. As the "party claiming preemption," Plaintiff "bears the burden of showing with specificity that Congress intended to preempt state law." *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (citation modified). Congress has not spoken clearly to preempt New Mexico's laws, Plaintiff has not met its burden, and the Court should dismiss the complaint.

**1. SB 582 does not condition eligibility for state educational benefits on residence, so § 1623 does not reach, let alone preempt the statute.**

Section 1623 applies only to state laws that provide discounted tuition to immigrants not lawfully present "on the basis of residence within a State." New Mexico's educational attainment pathway provides a benefit based on high-school attendance and graduation, *not* residency. So, the educational attainment pathway is not preempted by § 1623.

Start with the plain language of § 1623. Courts have taken "on the basis of" to mean but-for causation, and Plaintiff has advanced this very position in prior litigation. *Walz*, 825 F. Supp. 3d at 908–09 (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020)); *see* United States' Opp. to Mot. to Dismiss, at 12, *United States v. Walz*, 0:25-cv-02668, (Aug. 13, 2025), ECF No. 15 (stating that "on the basis of" in § 1623 "incorporates a 'but-for' causation test."). Even the Fifth Circuit (in the appeal of a case cited by Plaintiff, Compl. ¶ 7) has

held that § 1623(a) "incorporates the simple and traditional standard of but-for causation." *United States v. Texas*, 181 F.4th 548, 557 (5th Cir. 2026) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020)). The only question, then, is whether a student's "principal, actual dwelling place," is the but-for cause of eligibility under the educational attainment pathway. § 1101(a)(33). It is not.

"Residence" is defined in the statute to mean "the place of general abode; . . . [the] principal, actual dwelling place in fact, without regard to intent." § 1101(a)(33); 8 U.S.C. § 1641(a) (stating that "[e]xcept as otherwise provided in this chapter, the terms used in this chapter have the same meaning given such terms in section 101(a) of the Immigration and Nationality Act"). "Read all together, a state statute would be preempted by the first portion of § 1623 if it provides postsecondary education benefits to unlawful noncitizens because their principal, actual dwelling place is within the State." *Walz*, 825 F. Supp. 3d at 909.

SB 582 does not provide discounted tuition to unlawful noncitizens because their principal, actual dwelling place is within New Mexico. Rather, unlike the residency pathway, the attainment pathway grants a tuition discount to people who attend high school in New Mexico for a year, and graduate from high school in New Mexico. These criteria do not require a person to have their "principal, actual dwelling place" within New Mexico's borders. Consider a few examples.

To start, people who are not residents, but eligible for in-state tuition under the educational attainment pathway are students who attend boarding schools in New Mexico. Take Connor, a middle-school student. Connor lives in Columbia, South Carolina—his mom is actively deployed at Fort Jackson. Connor learns about and decides to attend the New Mexico Military Institute, a public boarding high school, which offers in-state tuition to the children of veterans, regardless of residency. *Military Families*, New Mexico Military Institute,

https://www.nmmi.edu/admissions/military-families/ (last visited Oct. 15, 2026). When he graduates from the Institute, Connor hopes to attend New Mexico State University. His residence remains in South Carolina under federal law (and state law, because he remains a dependent of his parents). But because Connor attended and graduated from the Institute, he can still receive in-state tuition under the educational attainment pathway. Connor has not received a discounted tuition rate "on the basis of residence."

Or, for another angle, students who graduate high school in New Mexico but leave after graduating are not New Mexico residents, yet still eligible for in-state tuition under the educational attainment pathway. Say Caroline attends Miyamura High School in Gallup. After graduation, she finds work guiding at the Grand Canyon and moves to Flagstaff, Arizona. Her "principal, actual dwelling place" is in Arizona, so she is not a New Mexico resident under § 1623 (or under state law). But, under New Mexico's educational attainment pathway, she can still return home and receive in-state tuition at the University of New Mexico because she attended and graduated high school at New Mexico. Caroline has not received a discounted tuition rate "on the basis of residence."

So too for other groups, such as students who live on the other side of New Mexico's state and international borders but attend school in New Mexico, N.M. Stat. Ann. § 22-12A-5(C), (D) (2026) (permitting students who "do not live within the state" to attend New Mexico public schools for a fee); students who attend other types of boarding schools (*e.g.*, tribally-run boarding schools (Santa Fe Indian School, Navajo Prep), Bureau of Indian Education-run boarding schools, religious boarding schools (Menaul School), and other boarding schools (United World College)); and students who might have graduated from high school in New Mexico but do not meet all the

requirements of the residency pathway (*e.g.*, the "overt acts" requirements), may utilize the educational attainment pathway even though they do not qualify as residents under § 1623. All these groups receive tuition only on the basis of their educational attainment. Residency never enters the calculus.[3]

Courts agree that educational attainment is different from residency. In reviewing pure-educational attainment statutes like New Mexico's, courts have found that § 1623 does not preempt such laws. *Martinez v. Regents of Univ. of California*, 241 P.3d 855, 861, 864 (Cal. 2010) ("Attending high school in California for at least three years and meeting the other requirements [graduation from a California high school] are not the functional equivalent of residing in California."); *United States v. Virginia*, ___ F. Supp. 3d ___, 2026 WL 2984988, at *9–*11 (E.D. Va. Oct. 5, 2026) ("Because Virginia's Tuition Equity Pathway [which provides in-state tuition on the basis of high school attendance in Virginia, graduation from a high school in Virginia, passage of an equivalency test, or income tax return filings] does not provide in-state tuition 'on the basis of residence,' Section 1623(a) does not operate to preempt it."); *Walz*, 825 F. Supp. 3d at 909 ("Whether the number of those students [who are not Minnesota residents, but went to high school in Minnesota] is large or small is irrelevant—unless the availability of the benefit provided by the State depends on residency, there is no but-for causation. And without but-for causation, § 1623 cannot preempt the Resident Tuition Statute."). So too here. Like California, Minnesota, and

---

[3] Plaintiff challenges only the educational attainment pathway in this lawsuit. However, for those benefits where residency *is* a factor, like the residency pathway, New Mexico complies with § 1623 by providing those benefits *only* to citizens and lawful permanent residents. § 5.7.18.7(H).

Virginia, New Mexico extends in-state tuition and financial assistance to immigrants not lawfully present solely based on educational attainment, not residency. There is no preemption.

**2. Nor is the educational attainment pathway a "proxy" for residency.**

Even if all well-pleaded facts are taken to be true, Plaintiff's allegation that SB 582's educational attainment requirement is a "proxy for residency" is facially implausible and legally irrelevant. Compl. ¶ 43. Plaintiff argues that because New Mexico guarantees a free high school education to its residents, high school graduation is the functional equivalent of residency and therefore preempted. *Id.* ¶ 43 (citing N.M. Stat. Ann. § 22-1-4(A)).

It is not. Plaintiff's "proxy" argument relies on unfounded assumptions which are not alleged and cannot be reasonably inferred from any allegations in the Complaint. First, the proposition assumes that all New Mexico high school graduates attend college immediately upon graduation. However, New Mexico's postsecondary institutions are designed to accommodate different educational journeys, including leaving the state (and establishing residency elsewhere) before returning to New Mexico for college. More importantly, Plaintiff's reasoning commits a fundamental fallacy: just because all residents are guaranteed a free high school education does not mean that everyone who graduates from high school in New Mexico is a New Mexico resident. *Affirmation of the consequent*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/affirmationoftheconsequent (last visited Oct. 10, 2026); *see, e.g.*, § 22-12A-5(C), (D) (allowing students who "do not live within" New Mexico to enroll in its public schools for a fee); *Military Families*, New Mexico Military Institute, https://www.nmmi.edu/admissions/military-families/ (last visited Oct. 15, 2026) (offering in-state tuition to non-resident children of out-of-state active-duty military members or veterans).

Educational attainment is both "under and overinclusive of [state] residency." *Virginia*, 2026 WL 2984988, at *9. It does not encompass all New Mexico residents because some residents may have graduated high school out-of-state, returned to their home in New Mexico, and are newly seeking postsecondary education. And it encompasses many students who are not New Mexico residents, such as students who attend a boarding school in New Mexico, or graduated high school in New Mexico and have established residency elsewhere. The educational attainment pathway is "not, as the United States claims, a 'proxy' for residency." *Id.*

Even if Plaintiff were correct that educational attainment is a proxy for residency, this would not matter for preemption purposes. An express preemption analysis, like any statutory interpretation exercise, looks at the plain language of the statute. And "Congress specifically referred to *residence*—not some form of surrogate for residence—as the prohibited basis for granting unlawful aliens a postsecondary education benefit." *Martinez*, 241 P.3d at 864. Plaintiff has couched its challenge as only an express preemption analysis, it cannot smuggle in expansive arguments about the structure and intent of § 1623 when the statutory language is plain. Compl. ¶¶ 57, 60, 63, 66, 69. The "best evidence" of any Congress's intent to preempt is "necessarily" the "plain wording of the clause," not general statements about Congress's intentions. *Franklin*, 579 U.S. at 125 (citation modified); *cf.* Compl. ¶¶ 19–22, 27–29. If Congress wanted to preempt states from providing in-state tuition and financial assistance on the basis of proxies for residence it could have written such a statute. It did not. Instead, § 1623 speaks only of residence and applies a strict but-for causation test.

Plaintiff's cited caselaw is not persuasive, much less controlling or even analogous. None concern an educational attainment-only state law like SB 582. Instead, every decision cited in the

Complaint involves a state law that made immigrants not lawfully present eligible either on the basis of residency alone or residency *plus* educational attainment. These cases all explain that "[w]hen a state law ties postsecondary education benefits to high-school attendance or graduation in the state *together with residence-related requirements*" like physical presence, "the benefit is still granted 'on the basis of residence' for purposes of § 1623(a)." *United States v. Illinois*, ___ F. Supp. 3d ___, 2026 WL 2137256, at *9 (S.D. Ill. July 24, 2026) (emphasis added); *Texas*, 181 F.4th at 555–56 (citing Tex. Educ. Code Ann. § 54.052a(3)) (residency plus educational attainment); *United States v. Nebraska*, 835 F. Supp. 3d 962, 999 (D. Neb. June 3, 2026) (citing Neb. Rev. Stat. § 85-502(1)–(5)) (residency only); *United States v. Oklahoma*, No. 6:25-CV-00265, ECF No. 11, at 1 (E.D. Okla. Aug. 7, 2025) (citing Okla. Stat. tit. 70, § 3242) (residency plus educational attainment).

Plaintiff relies heavily on matters resolved through consent decrees, not adverse litigation by the parties. However, "[a]s negotiated documents lacking legal analysis, these consent decrees do not constitute persuasive authority." *Christmon v. B&B Airparts, Inc.*, 735 F. App'x 510, 514 n.2 (10th Cir. 2018). Plaintiff's strategy should be rejected. Oklahoma's order is a "Final Consent Judgment," Compl. ¶ 7, and the proceedings reviewed by the Fifth Circuit also involved a consent judgment, *Texas*, 181 F.4th at 551. In these cases, Plaintiff filed a complaint, and due to "advance" negotiations, Plaintiff and a state government were able to enter a consent decree declaring a state law preempted in as little as six hours. *Texas*, 181 F.4th at 563 (Ramirez, J., dissenting). By consent with politically aligned governors and attorneys general, Plaintiff is attempting to fabricate favorable precedent it can cite in future (actually adverse) litigation.

While residency-only and residency *plus* educational attainment laws may be preempted, educational attainment-only laws are definitively not. New Mexico has an educational attainment-only law that does not provide a benefit on the basis of residence. It is not preempted.

A final point. Plaintiff's complaint fundamentally misunderstands New Mexico's tuition laws. Again and again, the complaint incorrectly asserts that immigrants not lawfully present "residing in New Mexico are eligible for financial aid so long as they satisfy New Mexico residency requirements, while U.S. citizens residing outside New Mexico are not eligible." Compl. ¶ 52. That assertion is simply untrue. New Mexico law is crystal clear: immigrants who are not lawfully present cannot receive educational benefits just because they are state residents. A person can only qualify as a "New Mexico resident for tuition purposes" if they are a citizen or lawful permanent resident. § 5.7.18.7(H). The federal definition of "residence" does not help Plaintiff's case either. An immigrant not lawfully present who is a New Mexico resident under § 1623 (New Mexico is their "place of general abode") would not be eligible on the basis of their "place of general abode." Instead, immigrants not lawfully present can only qualify through the educational attainment pathway (which again, is not the same as residence), and they can only access that pathway on equal footing with non-residents.

The educational attainment pathway does not provide in-state tuition and financial assistance on the basis of residence. Plaintiff's complaint should be dismissed.

**3. Regardless of whether residency is implicated, SB 582 satisfies § 1623's second requirement by granting U.S. citizens, regardless of residence, the same benefits as immigrants not lawfully present.**

Even if the Court were to find New Mexico's educational attainment pathway provided benefits on the basis of residency, the Complaint still fails to state a viable claim for relief based on a simple facial reading of § 1623 and state law. Section 1623 has two steps. First, § 1623 applies to laws that open educational benefits to immigrants not lawfully present "on the basis of residence." But a residency-based law satisfies § 1623 if it makes "a citizen or national of the United States . . . eligible for such a benefit (in no less an amount, duration, and scope) without regard" to their residence. The educational attainment pathway meets this second step by making out-of-state residents eligible for in-state financial benefits without regard to their residence.

As explained above, § III(A)(1), *supra*, many types of students who are not residents receive in-state tuition and financial assistance: students who attended boarding schools in New Mexico but did not establish residency in-state, students who crossed state borders to attend school, and students who graduated from New Mexico high schools but left the state and lost residency. *Walz*, 825 F. Supp. 3d at 912 (holding state law not preempted by § 1623 because "nonresidents can—and do—qualify for resident tuition: by living in a neighboring state and attending Minnesota high schools, attending a Minnesota boarding school, or attending and graduating from a Minnesota high school before moving out of state."). All these citizens receive a benefit "without regard" to their residence. So, SB 582 satisfies § 1623's second requirement to provide the same benefit to citizens without regard to their residence.

Furthermore, non-residents can qualify for in-state tuition and financial assistance pursuant to other avenues. § 5.7.18.10(A)–(J). For instance, non-residents can receive these benefits if they

are members of New Mexico's tribal nations, enlisted in the military and stationed in New Mexico, an active member of the national guard, certain Texas residents, certain Colorado and Arizona residents, athletes, merit scholarship recipients, or graduate assistants. *Id.* New Mexico makes in-state tuition and financial assistance available to individuals "without regard" to their residence, and therefore SB 582 is not preempted. *Virginia*, 2026 WL 2984988, at *13 (holding that the presence of other, unchallenged, pathways for non-resident citizens to receive in-state tuition benefits meant statute was not preempted by § 1623).

Plaintiff's complaint attempts to blunt this argument by repeatedly suggesting that any benefit offered to immigrants not lawfully present on the basis of residency must be made "available to *all* U.S. citizens regardless of residency." Compl. ¶ 56 (emphasis added); *id.* ¶¶ 56, 59, 62. But § 1623 requires only that a state law make the benefit available to "*a* citizen or national of the United States." (emphasis added). Despite the complaint's best efforts at revision, the statute does not say "all."

The plain meaning of "a" was a "single but unspecified person or thing" or "any" when § 1623 became law, and its meaning has not changed. The American Heritage Dictionary 1 (3d ed. 1992) (defining "a" to mean "one" or "any"); *Indefinite Article*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/indefinite%20article (last visited Oct. 18, 2026) ("The *indefinite article* is *a;* it identifies a single, but not specific, person or thing."). And the Supreme Court agrees that "a" means "single," when as here, it precedes a "discrete, countable thing" (here, 'a citizen'). *Niz-Chavez v. Garland*, 593 U.S. 155, 164 (2021) (rejecting the idea that "every use of the singular 'a'" is transformed "into the plural 'several'"). All § 1623 requires is that some citizens be eligible for in-state financial benefits without regard to their residence. And

in New Mexico, they are—whether one considers the educational attainment pathway or the other myriad opportunities for non-residents to receive in-state tuition and financial assistance. Section 1623 does not preempt New Mexico's laws.

#### 4. New Mexico's regulations do not expand eligibility for in-state tuition and financial assistance beyond statute.

Plaintiff makes the cursory argument that the regulation codifying New Mexico's educational attainment pathway, § 5.7.18.10(K), is unlawful. Compl. ¶¶ 67–69. It argues that § 1621 requires that a state provide public benefits via an "enactment of a State law" and does not permit states to implement such measures via *regulations*. *Id.* ¶ 68 (quoting § 1621(d)). This Court should reject Plaintiff's half-baked argument.

To start, Plaintiff only challenges § 5.7.18.10(K) "[t]o the extent its promulgation was independent of the passage of SB 582." Compl. ¶ 68. The Complaint does not bother to explain whether, in fact, the regulation was promulgated independently or provides some different benefit than § 21-1-4.6. It only challenges Subsection K "[t]o the extent" its promulgation was independent of state law. Compl. ¶ 68. Plaintiff's "if" statements are not enough to state a claim.

Moreover, it is easy to tell that § 5.7.18.10(K) was promulgated to cleanly incorporate S.B. 582's educational attainment pathway into the New Mexico Administrative Code. This is because (1) § 5.7.18.10 was first promulgated in 2007, two years after the passage of S.B. 582 and (2) because it uses nearly identical language to § 21-1-4.6. Here, Defendant New Mexico Higher Education Department promulgated § 5.7.18.10. N.M. Code R. § 5.7.18.1 (issuing authority). Like any other New Mexico administrative agency, the Department is "limited to the power and authority expressly granted or necessarily implied by . . . statute[]." *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 13, 289 P.3d 1232, 1237 (citation

modified). And, when a regulation "does little more than restate the terms of the statute itself," it does not grant the agency any "special authority" beyond the statute's plain language. *Gonzales v. Oregon*, 546 U.S. 243, 257–58 (2006). Section 5.7.18.10 does not provide a separate benefit beyond what is provided for in § 21-1-4.6, and so § 1621's "enactment of a state law" restriction does not apply.

Even if § 5.7.18.10(K) had some independent effect on the eligibility of immigrants not lawfully present for in-state financial benefits, it would not matter because § 1623 requires only the "enactment of a State law" to provide a public benefit, and regulations are state laws just like statutes. "State law" is not a defined term in the federal eligibility reform laws. But in New Mexico, "the Legislature grants agencies the discretion of promulgating rules and *regulations* which have the force of law." *Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.,* 1984-NMSC-042, ¶ 7, 101 N.M. 291, 292, 681 P.2d 717, 718 (emphasis added). To be sure, one court has decided that a state cannot grant a public benefit via regulation. *United States v. Kentucky Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597, at *10 (E.D. Ky. Mar. 31, 2026). But in that case, there was no underlying state law authorizing the tuition benefit. Here, New Mexico has a law: SB 582 (codified as § 21-1-4.6) is a post-1996 legislative enactment that authorizes the promulgation of § 5.7.18.10(K).

Plaintiff never identifies how § 5.7.18.10(K) provides a benefit independent of and different from what is authorized by § 21-1-4.6. The Court should dismiss this claim.

**B. Section 1623 is a mandate directed at state legislatures and, in purporting to limit State authority, violates anticommandeering principles.**

If the Court decides that New Mexico's educational attainment pathway is preempted, dismissal of Plaintiff's complaint is warranted for the independent reason that § 1623 violates the Tenth Amendment's anticommandeering principle.[4] While Congress may preempt state law, it must do so via a constitutional exercise of its powers. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (citation modified). Under the Tenth Amendment, Congress lacks the power to compel or restrain states: the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. "States are not mere political subdivisions of the United States[,]" and "[s]tate governments are neither regional offices nor administrative agencies of the Federal Government." *New York v. United States*, 505 U.S. 144, 188 (1992).

The preemption and commandeering analysis is governed by the Supreme Court's decision in *Murphy v. NCAA*, 584 U.S. 453 (2018). There, the Court clarified that, "every form of preemption is based on a federal law that regulates the conduct of *private actors*, not the States." *Id.* at 479. Section 1623 fails this threshold inquiry because it confers no right on any private actor. The federal law does not restrict unlawfully present students from accepting benefits, nor penalize them for doing so. Similarly, the provision does not restrict the conduct of *private* institutions of higher education. Its only directive is aimed at state legislatures, which is the epitome of unlawful

---

[4] If, however, the Court decides the educational attainment pathway is not preempted, it need not reach the commandeering argument. *In re Snyder*, 472 U.S. 634, 642 (1985) ("We avoid constitutional issues when resolution of such issues is not necessary for disposition of a case.").

commandeering. On this issue, *Murphy* found no material difference between laws that compelled a state to act as opposed to those that prohibited states from acting. *Id.* at 474–75.

Here, § 1623 usurps a state's authority over its educational assistance programs. Start with the statutory text. Section 1623 is written in the passive voice, but the structure of the eligibility reform laws reveals that it acts upon a state legislature's funding decisions, not private actors. It reads: "an alien who is not lawfully present in the United States shall not be eligible . . . for any postsecondary education benefit" on the basis of residence. § 1623(a). The section applies to "benefits provided on or after July 1, 1998," § 1623(b); and the chapter's restrictions on public benefits apply to "the enactment of . . . State law[s]." § 1621. Section 1623 restricts the terms of a state's benefits program, not the individuals receiving the benefits, so it unlawfully commandeers state legislatures. *Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) ("[C]ontext can confine a passive-voice sentence to a likely set of actors."). Section 1623 is addressed only to the "authority of postsecondary educational institutions" operated by the state, not individuals. *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007) ("Section 1623 . . . speaks in terms of institutional policy and practice and employs an aggregate focus which cannot give rise to individual rights." (citation modified)).

Anti-commandeering principles apply to protect the historic police powers of states, including educational policy. Education "presents a myriad of intractable economic, social, and even philosophical problems," so the state "legislature's efforts to tackle the problems should be entitled to respect." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973) (citation modified). Section 1623 is an unconstitutional diktat over New Mexico's pursuit of its legitimate educational goals. Recent statements of the United States are in accord—decisions about how to

fund state educational programs are at the core of state, not federal, authority. Recent executive orders explain that decisions about funding education should "be returned to the States," and the "experiment of controlling American education through Federal programs and dollars . . . has plainly failed our children, our teachers, and our families." Exec. Order No. 14242, 90 Fed. Reg. 13679, 13679 (Mar. 20, 2025). In this case, New Mexico agrees. New Mexico has made the state policy decision that funding in-state tuition benefits for students based on educational attainment, and regardless of immigration status, is essential for an educated populace, a trained workforce, and an informed civic community. Section 1623 unconstitutionally meddles with that determination. Plaintiff's complaint should be dismissed.

Plaintiff reads § 1623 as permitting a state to pass a law that makes immigrants not lawfully present eligible for in-state tuition on the basis of residence *only* if it provides all United States Citizens with the same benefit; a state "may not" pass a law that just makes immigrants not lawfully present eligible for in-state tuition on the basis of residence. *Murphy*, 584 U.S. at 474. In its complaint, Plaintiff outright admits that § 1623 is a command to States, stating that "a state *may not offer* in-state tuition (or 'resident tuition') benefits to illegal aliens present in the United States based on their residence." Compl. ¶ 24 (emphasis added). That is telling a state legislature what it "may and may not do," and that is commandeering. *Murphy*, 584 U.S. at 474. Section 1623 works by, in effect, installing "federal officers . . . in state legislative chambers" to "stop legislators from voting on any offending proposals." *Id.* at 471, 474. Section 1623 is unconstitutional and cannot preempt state law.

## CONCLUSION

Plaintiff's complaint does not state a claim and should be dismissed with prejudice. Plaintiff's legal argument rests on interpretations of § 1623 of SB 582 that run counter to their plain text and on assumptions not alleged or reasonably supported by the Complaint or black letter law. Plaintiff also ignores the fatal flaw of § 1623, namely, that it is an unconstitutional federal intrusion on state authority, in violation of the Tenth Amendment and anticommandeering principles. For the foregoing reasons, Plaintiff's Complaint fails to state a plausible claim for relief.

Respectfully submitted,

RAÚL TORREZ
Attorney General

ANJANA SAMANT
Deputy Counsel for Impact Litigation

/s/ Daniel Ahrens___
DANIEL AHRENS
Assistant Solicitor General

New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
505-490-4060
asamant@nmdoj.gov
dahrens@nmdoj.gov

Counsel for Defendants the State of New Mexico, New Mexico Higher Education Department, and Secretary of Higher Education, Stephanie Rodriguez

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

/s/Daniel Ahrens
Daniel Ahrens