**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF NEW MEXICO; NEW MEXICO HIGHER EDUCATION DEPARTMENT; and STEPHANIE RODRIGUEZ, in her official capacity as Secretary of New Mexico Higher Education Department,

Defendants.

Case No. 26-cv-02827-SMD-SCY

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff United States respectfully opposes Defendants' motion to dismiss and cross-moves for summary judgment under Federal Rule of Civil Procedure 56 on all claims alleged in the Complaint.[1]

## INTRODUCTION

Federal law is clear: States cannot treat nonresident U.S. citizens and nationals worse than resident illegal aliens when it comes to postsecondary education benefits. When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), it made clear that illegal aliens "shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a [U.S.] citizen or national . . . is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Despite Congress's clear prohibition, New Mexico makes illegal aliens eligible for postsecondary education benefits on the basis of residence without making U.S. citizens and nationals eligible for the same benefits without regard to residence.

In 2005, New Mexico enacted Senate Bill 582 ("SB 582"), which extends eligibility for New Mexico in-state tuition benefits and financial aid, including grants and scholarships, to illegal aliens. 2005 N.M. Laws Ch. 348 (S.B. 582). Under SB 582, "[a]ny tuition rate or state-funded financial aid that is granted to residents of New Mexico shall also be granted on the same terms to all persons, regardless of immigration status," who attended a high school in New Mexico for at least one year and either graduated from a New Mexico high school or received an equivalent

[1] Pursuant to Local Civil Rule 7.1(a), counsel for Plaintiff conferred with counsel for Defendants regarding the scheduling and briefing of the parties' cross-dispositive motions. Defendants oppose the relief requested in this cross-motion for summary judgment.

credential in New Mexico. N.M. Stat. Ann. § 21-1-4.6(B). Two years later, the New Mexico Higher Education Department promulgated a regulation implementing what it terms SB 582's "Nondiscrimination principle." N.M. Code R. § 5.7.18.10(K). Because satisfying these eligibility requirements ordinarily requires living in New Mexico during the relevant period, the Challenged Laws effectively make illegal aliens eligible for resident-rate tuition and financial aid benefits on the basis of residence in New Mexico. N.M. Stat. Ann. § 21-1-4.6(B); N.M. Code R. § 5.7.18.10(K) (the "Challenged Laws").

Section 1623 expressly preempts the Challenged Laws, and numerous courts have agreed. *See, e.g.*, *United States v. Texas*, 181 F.4th 548 (5th Cir. 2026); *United States v. Nebraska*, 835 F. Supp. 3d 962 (D. Neb. 2026), *appeal docketed*, No. 26-2124 (8th Cir. June 8, 2026); *United States v. Kansas*, No. 5:26-CV-04066-HLT-BGS, 2026 WL 2654069 (D. Kan. Sep. 9, 2026), *appeal docketed*, No. 26-3201 (10th Cir. Sep. 21, 2026); *United States v. Oklahoma*, No. 25-CV-265, 2025 WL 2815662 (E.D. Okla. Aug. 7, 2025) *R. & R. adopted*, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025), *appeal docketed*, No. 25-7089 (10th Cir. Oct. 30, 2025); *United States v. Illinois*, No. 25-CV-1691-DWD, 2026 WL 2137256 (S.D. Ill. July 24, 2026).

Defendants ask the Court to depart from these decisions based on the meritless challenge that SB 582 is based on educational attainment rather than residence, that Section 1623 is satisfied whenever a single nonresident citizen may obtain the same benefits, and that Section 1623 violates the Tenth Amendment. Those arguments fail. On the merits, the undisputed facts demonstrate that SB 582 makes illegal aliens eligible for postsecondary education benefits on the basis of residence and does not make those same benefits available to U.S. citizens and nationals without regard to

residence. And Section 1623 does not implicate, much less violate, the Tenth Amendment because it regulates private actors and exercises Congress's plenary power over immigration.

Moreover, although Congress permitted eligibility for certain public benefits through "the enactment of a State law," 8 U.S.C. § 1621(d), New Mexico's Higher Education Department separately promulgated Section 5.7.18.10(K) in 2007. That regulation was not enacted by the Legislature and therefore is independently preempted by Section 1621. *See United States v. Ky. Council on Postsecondary Educ.*, No. 3:25-CV-00028, 2026 WL 880597, at *10 (E.D. Ky. Mar. 31, 2026). This regulation independently violates Section 1621(d) because it was promulgated by an agency rather than enacted by the New Mexico Legislature.

Accordingly, the Court should deny Defendants' motion to dismiss and grant summary judgment to the United States on all claims.

## BACKGROUND

### I. <u>Federal Law</u>

Ours is a dual sovereign system of government that balances power between the Federal Government and the States. Under this system, the Constitution grants to Congress "certain enumerated powers" and "all other legislative power is reserved for the States." *Murphy v. NCAA*, 584 U.S. 453, 471 (2018). Under the Supremacy Clause, a federal law exercising an enumerated congressional power preempts contrary state laws. *See id.* But Congress cannot "issue direct orders to the governments of the States," so a federal law is only preemptive if it "regulates the conduct of private actors" and "not the States." *Id.* at 471, 479.

Congress "has broad, undoubted power over the subject of immigration and the status of aliens" derived from the Naturalization Clause, U.S. Const. art. I, § 8, cl. 4, and the Federal

Government's "inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394–95 (2012) (citing *Toll v. Moreno*, 458 U.S. 1, 10 (1982)). Congress's "power to expel or exclude aliens" is "a fundamental sovereign attribute . . . largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953). Indeed, "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).

Congress exercised that power when it included "statements concerning national policy with respect to welfare and immigration" in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"), 8 U.S.C. § 1601. "Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes." *Id.* § 1601(1). And "[i]t continues to be the immigration policy of the United States that . . . aliens within the Nation's borders not depend on public resources to meet their needs" and that "the availability of public benefits not constitute an incentive for immigration to the United States." *Id.* § 1601(2). Yet "aliens have been applying for and receiving public benefits from Federal, State, and local governments at increasing rates" "[d]espite the principle of self-sufficiency." *Id.* § 1601(3). As such, "[i]t is a compelling government interest to enact new rules for eligibility . . . in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." *Id.* § 1601(5), (6).

As relevant here, PRWORA provides: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such

alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." *Id.* § 1621(d).

Another federal law, IIRIRA, implements this national policy by restricting illegal aliens' eligibility for postsecondary education benefits on the basis of residence:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a). According to the conference committee that marked up this language, "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104-828, at 240 (1996) (Conf. Rep.); *see also* H.R. 2202, 104th Cong. § 507, H.R. Rep. No. 104-828, at 134.

The President recently reaffirmed this objective in ordering federal departments to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." Exec. Order No. 14218 § 2, 90 Fed. Reg. 10581, 10581 (Feb. 25, 2025). The President has also directed relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens." Exec. Order No. 14287 § 5, 90 Fed. Reg. 18761, 18762 (May 2, 2025).

## II. New Mexico Law

N.M. Stat. Ann. § 21-1-2(A)(1)-(3) authorizes public universities to charge "each student who is a resident of New Mexico" lower "matriculation fees" and "tuition fees" than "each student who is not a resident of New Mexico."

SB 582, codified at N.M. Stat. Ann. § 21-1-4.6, rewards illegal aliens with eligibility for in-state tuition benefits in New Mexico while denying that same benefit to U.S. citizens who are not residents of New Mexico. *Id.* § 21-1-4.6. Under this statute:

> Any tuition rate or state-funded financial aid that is granted to residents of New Mexico shall also be granted on the same terms to all persons, *regardless of immigration status*, who have attended a secondary educational institution in New Mexico for at least one year and who have either graduated from a New Mexico high school or received a high school equivalency credential in New Mexico.

*Id.* § 21-1-4.6(B) (emphasis added).

The New Mexico Higher Education Department promulgated what it refers to as SB 582's "Nondiscrimination principle," implementing SB 582's mandate. N.M. Code R. § 5.7.18.10(K). This implementing regulation repeats the statutory language, "[n]otwithstanding the provisions of Subsection H of 5.7.18.7 NMAC[.]"[2] *Id.* If a student has met this requirement, "the student shall continue to be considered a non-resident for reporting purposes but will receive the benefit of the in-state tuition rates." *Id.* § 5.7.18.10.

## III. Procedural History

The United States filed the Complaint on August 27, 2026 alleging that federal law expressly preempts the Challenged Laws and seeking declaratory and injunctive relief. Compl.,

---

[2] "New Mexico resident for tuition purposes" means a U.S. citizen or permanent resident who has satisfied the requirements in N.M. Admin. Code § 5.7.18.9. *See* N.M. Admin Code § 5.7.18.7(H).

ECF No. 1. On October 6, 2026, the Court entered the parties' proposed briefing schedule on cross-dispositive motions. Order, ECF No. 10. On October 27, 2026, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 16. The United States submits this opposition in response to Defendants' motion and cross moves for summary judgment.

**STATEMENT OF MATERIAL FACTS**

1. New Mexico public institutions of higher education are authorized to charge lower tuition and fees to students who are residents of New Mexico than to students who are not residents of New Mexico. N.M. Stat. Ann. § 21-1-2(A)(1)-(3).

2. In 2005, New Mexico enacted Senate Bill 582, codified at N.M. Stat. Ann. § 21-1-4.6.

3. Section 21-1-4.6(B) provides that "[a]ny tuition rate or state-funded financial aid that is granted to residents of New Mexico shall be granted on the same terms to all persons, regardless of immigration status," who "attended a secondary educational institution in New Mexico for at least one year" and "either graduated from a New Mexico high school or received a high school equivalency credential in New Mexico." *Id.* § 21-1-4.6(B).

4. Section 21-1-4.6(B) applies "regardless of immigration status." *Id.*

5. In 2007, the New Mexico Higher Education Department promulgated N.M. Code R. § 5.7.18.10(K). *See* N.M. Code R. § 5.7.18.10(K).

6. Section 5.7.18.10(K) provides that "[a]ny tuition rate or state-funded financial aid that is granted to residents of New Mexico shall also be granted on the same terms to all persons, regardless of immigration status," who "attended a secondary educational institution in New

Mexico for at least one year" and "either graduated from a New Mexico high school or received a high school equivalency credential . . . in New Mexico." *Id.*

7. Under Section 5.7.18.7(H), a "New Mexico resident for tuition purposes" must be a United States citizen or lawful permanent resident. *Id.* § 5.7.18.7(H).

8. Section 5.7.18.10 provides that a qualifying student "shall continue to be considered a non-resident for reporting purposes but will receive the benefit of the in-state tuition rates." *Id.* § 5.7.18.10.

9. A person qualifies for eligibility under Section 21-1-4.6(B) and Section 5.7.18.10(K) if the person attended a secondary educational institution in New Mexico for at least one year and either graduated from a New Mexico high school or received a high school equivalency credential in New Mexico. N.M. Stat. Ann. § 21-1-4.6(B); N.M. Code R. § 5.7.18.10(K).

10. Section 1623 of Title 8 provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

11. Section 1621(d) provides that a State may make an alien not lawfully present in the United States eligible for a state or local public benefit only through "the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." *Id.* § 1621(d).

12. The term "residence" is not defined in either 8 U.S.C. § 1623 or 8 U.S.C. § 1621.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, taken as true, make the "claim to relief . . . plausible on its face." *Acuity v. Kinsale Ins. Co.*, 750 F. Supp. 3d 1229, 1234 (D. Colo. 2024) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Generally, the complaint "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* at 1234-35 (citation modified). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

## ARGUMENT

### I. <u>Section 1623 Expressly Preempts the Challenged Laws.</u>

Defendants do not dispute that the Challenged Laws make illegal aliens eligible for postsecondary education benefits. Instead, they argue that those benefits are not provided "on the basis of residence" and that Section 1623 is satisfied because some nonresident U.S. citizens may qualify for the same benefits. MTD at 7-19. Both arguments fail. The text of Section 1623 resolves this case. The Challenged Laws make illegal aliens eligible for postsecondary education benefits based on criteria that ordinarily require living in New Mexico during the relevant period, while denying those same benefits to a vast majority of nonresident U.S. citizens and nationals who live elsewhere. Because the Challenged Laws directly conflict with Section 1623's express limitations, they are preempted as a matter of law.

**A. Section 1623 contains an express preemption provision.**

Defendants erroneously contend that "Congress has not spoken clearly to preempt New Mexico's laws." *Id.* at 8. The Supreme Court has repeatedly explained that express preemption analysis begins with the statutory text because it provides "the best evidence of Congress'[s] preemptive intent." *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023). Courts "also consider, secondarily, the preemption clause's statutory context and the statute's overall purpose." *Nw. Selecta, Inc. v. González-Beiró*, 145 F.4th 9, 15 (1st Cir. 2025) (citing *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 96 (2017)).

Congress could not have spoken more clearly. Section 1623 provides:

> *Notwithstanding any other provision of law*, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a) (emphasis added).

The statute begins with the phrase "[n]otwithstanding any other provision of law," signaling Congress's intent that conflicting state law yields to federal law. *Texas*, 181 F.4th at 559 (finding that Section 1623(a) contains an express preemption provision). The question, therefore, is not whether Congress intended preemption; it is whether the Challenged Laws fall within the scope of Section 1623. They do.

**B. The Challenged Laws make illegal aliens eligible for postsecondary education benefits "on the basis of residence."**

Defendants incorrectly argue that New Mexico confers benefits merely based on high school attendance and graduation rather than residence. MTD at 8-15. That argument fails. Even if high school attendance and graduation are treated as distinct eligibility criteria, the Challenged Laws still make illegal aliens eligible for postsecondary education benefits on the basis of residence because living in New Mexico remains a but-for cause of that eligibility. Moreover, attendance at and graduation from a New Mexico high school are themselves closely tied to residence in New Mexico. Under either approach, the Challenged Laws provide benefits "on the basis of residence" within the meaning of Section 1623. Accordingly, the United States is entitled to summary judgment on all its claims.

**1. Residence is a but-for cause of eligibility under the Challenged Laws.**

Even apart from the relationship between the Challenged Laws' high school requirements and residence, Defendants' position fails because Section 1623 does not require residence to be the sole criterion for eligibility. As Defendants acknowledge, the phrase "on the basis of" incorporates traditional but-for causation principles. MTD at 8-9; *Texas*, 181 F.4th at 556-58. Under that standard, a benefit is provided "on the basis of residence" whenever residence is a but-for cause of eligibility, even if other requirements also exist. *Texas*, 181 F.4th at 556-58; *see Illinois*, 2026 WL 2137256, at *10 ("The eligibility criteria in the challenged statutes operate in the same manner: residence is a necessary condition for the conferral of the benefits at issue.").

Here, it is undisputed that illegal aliens who live in New Mexico during the relevant period and satisfy the high school requirements become eligible for in-state postsecondary education

benefits. The hypotheticals offered by Defendants do not change that conclusion. MTD at 9-11. The fact that some students may attend boarding school in New Mexico, later move away after graduation, or satisfy the statute under atypical circumstances does not change the ordinary operation of the Challenged Laws. Section 1623 asks whether eligibility is granted "on the basis of residence," not whether every conceivable applicant is a current resident. Students who satisfy the Challenged Laws' high school attendance and graduation requirements ordinarily live in New Mexico during the relevant period, whether in a family home, dormitory, or other residence. Likewise, a student's later departure from New Mexico does not erase the fact that the individual lived in New Mexico during the relevant period.[3] Residence therefore remains a but-for cause of eligibility under the ordinary operation of the Challenged Laws.

Defendants' attempt to distinguish certain cases cited in the Complaint is likewise unpersuasive.[4] MTD at 13-14. Those decisions do not hold that high school attendance and graduation cease to implicate Section 1623 whenever a State omits the word "residence" from its

---

[3] New Mexico law likewise reflects the ordinary connection between public school attendance and residence. A school-age person has a right to attend public school in the school district in which the person resides, and local school boards must establish attendance boundaries and prioritize enrollment for students residing within the district and attendance area. N.M. Stat. §§ 22-12A-3(A), 22-1-4(E). Although New Mexico permits certain exceptions, these provisions reinforce that attendance at and graduation from a New Mexico high school ordinarily occur while living in New Mexico.

[4] Defendants also miss the point by attempting to discount decisions such as *Texas* and *Oklahoma* because they ultimately resulted in consent judgments. MTD at 14. The United States cites those matters not as binding precedent but as examples of States recognizing that materially similar laws could not be reconciled with Section 1623 once challenged. Their persuasive value derives from their treatment of Section 1623 and materially similar laws, not from the procedural posture in which those cases concluded. Moreover, *Texas* involved intervention efforts, adversarial briefing, and substantive judicial analysis of Section 1623. *United States v. Texas*, 350 F.R.D. 74 (N.D. Tex. 2025), *aff'd*, 181 F.4th 548 (5th Cir. 2026).

statute. To the contrary, they recognize that Section 1623 reaches eligibility criteria that depend upon residence in the State, even when residence is not framed as a standalone requirement. *See Texas*, 350 F.R.D. at 80-81 (rejecting the argument that Section 1623 is inapplicable merely because eligibility depends on multiple criteria rather than residence alone); *Illinois*, 2026 WL 2137256, at *8 (holding that Section 1623 preempted state laws conditioning eligibility for postsecondary education benefits on residing in Illinois while attending and graduating from an Illinois high school because these "objective facts" made eligibility turn on state residence); *Nebraska*, 835 F. Supp. 3d at 999-1000 (holding that eligibility for in-state tuition and related educational benefits based on Nebraska residence were preempted by Section 1623); *Oklahoma*, 2025 WL 2815662, at *1-2 (holding that Section 1623 preempted provisions extending in-state tuition and related educational benefits to illegal aliens based on high school graduation and other residence-related criteria).

Defendants therefore focus on the wrong question. The issue is not whether the Challenged Laws use the word "residence," but whether illegal aliens become eligible for postsecondary education benefits based on criteria that, in ordinary operation, depend upon living in New Mexico. Although Defendants identify limited circumstances in which a student living outside New Mexico may satisfy such requirements, MTD at 9-11, isolated exceptions do not alter the fact that attendance at a New Mexico high school for at least one year and graduation from such high school ordinarily require living in New Mexico during the relevant period. Residence therefore remains a but-for cause of eligibility under the Challenged Laws.

That conclusion is consistent with Congress's stated purpose for Section 1623. The Conference Report explained that the provision "provides that illegal aliens are not eligible for in-

state tuition rates at public institutions of higher education." H.R. Rep. No. 104-828, at 240 (1996); *see also* H.R. 2202, 104th Cong. § 507, H.R. Rep. No. 104-828, at 134. The Challenged Laws accomplish precisely what Congress prohibited: they make illegal aliens eligible for in-state tuition and related postsecondary education benefits based on criteria that depend upon residence in New Mexico.

**2. New Mexico's high school requirements are closely tied to residence in New Mexico.**

To qualify for the challenged benefits, a student must have attended a high school *in New Mexico* for at least one year and either graduated from a high school or obtained an equivalent credential *in New Mexico*. N.M. Stat. Ann. § 21-1-4.6; N.M. Code R. § 5.7.18.10(K).

Defendants attempt to avoid Section 1623 by importing the definition of "residence" from 8 U.S.C. § 1101(a)(33), which defines residences as a person's "place of general abode; . . . principal, actual dwelling place in fact, without regard to intent." MTD at 9. Courts have rejected that argument. *See, e.g.*, *Illinois*, 2026 WL 2137256, at *9-10 (rejecting argument that Section 1623(a) is not implicated because challenged law conferred benefits on the basis of alternative requirements rather than "residence" as defined in Section 1101); *Texas*, 181 F.4th at 556 n.14 (rejecting similar argument). Section 1623 neither incorporates nor cross-references Section 1101(a)(33), and nothing in the statutory text suggests Congress intended States to evade Section 1623 simply by replacing express residency requirements with functional equivalents.

Indeed, Defendants concede that "[w]ith the federal eligibility statutes in mind," New Mexico "crafted its laws" to allow students meeting the high school attendance and graduation criteria to "receive the same in-state financial benefits that New Mexico residents receive." MTD at 5. That admission underscores what this case is really about. Section 1623 turns on substance,

not labels. *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 230 (2023) ("'[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows,' and the prohibition against . . . discrimination is 'levelled at the thing, not the name.'"). New Mexico cannot evade federal law by removing the word "residence" from its eligibility criteria while continuing to make illegal aliens eligible for in-state tuition and financial aid benefits through requirements that ordinarily require living in New Mexico. As the Fifth Circuit recognized in *Texas*, conditioning eligibility on graduating from a state's high school system is conditioning eligibility on "a proxy for residence." *Texas*, 181 F.4th at 560. The same reasoning applies here.

Moreover, Defendants' argument fails even though New Mexico recognizes that illegal aliens are not eligible to qualify as "residents" under the State's ordinary residency rules. *See* N.M. Code R. § 5.7.18.7(H). Rather than denying those individuals resident rate benefits, however, New Mexico created a pathway through which students who satisfy the high school requirements receive the same in-state benefits. Indeed, New Mexico expressly provides that such a student "shall continue to be considered a non-resident for reporting purposes but will receive the benefit of the in-state tuition rates." *Id.* § 5.7.18.10. That labeling choice does not avoid Section 1623. Congress prohibited benefits conferred "on the basis of residence," not benefits conferred on persons formally designated as "residents." New Mexico therefore cannot evade Section 1623 by classifying illegal aliens as "non-residents" while granting them the same resident rate benefits through criteria that depend upon residence in New Mexico. Otherwise, any State could circumvent Section 1623 simply by removing the word "resident" from its laws and replacing it

with functional residency criteria. This is exactly the approach Defendants acknowledge New Mexico adopted "with the federal eligibility statutes in mind." MTD at 5.

Defendants principally rely on *Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855 (Cal. 2010), *United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026), *appeal docketed*, No. 26-1886 (8th Cir. May 7, 2026), and *United States v. Virginia*, No. 3:25-CV-1067, 2026 WL 2984988 (E.D. Va. Oct. 5, 2026). Those decisions do not warrant dismissal and do not preclude summary judgment for the United States.

*Walz* and *Martinez* misconstrued Section 1623 because those cases assumed that the state laws at issue did not make illegal aliens eligible for benefits on the basis of residence because some students who satisfied the laws' high school attendance and graduation requirements were not necessarily state residents. This conclusion is factually true but misses the point and overlooks the text of Section 1623 which does not require current residence, exclusive reliance on residence, or formal residency labels.

The same flaw appears in *Virginia*, which held that Section 1623's prohibition did not apply because the parties stipulated that certain nonresidents could attend Virginia public schools "in some circumstances." *See Virginia*, 2026 WL 2984988, at *10. But the existence of limited exceptions does not alter the ordinary operation of the eligibility scheme. Attendance at and graduation from a state's public schools ordinarily depend upon residence in that State. *See* n.3, *supra*. The United States submits that *Virginia* also misapplied Section 1623 because it focused on the existence of exceptional nonresident applicants rather than the ordinary operation of the statutory scheme.

Accordingly, the Challenged Laws make illegal aliens eligible for postsecondary education benefits "on the basis of residence" and fall squarely within the scope of Section 1623's express preemption provision. Defendants' contrary arguments fail as a matter of law, and summary judgment should be entered for the United States.

**C. The Challenged Laws prevent non-resident citizens from receiving postsecondary education benefits.**

Defendants erroneously contend that Section 1623's prohibition is eviscerated if any one U.S. citizen or national is eligible for benefits regardless of residence, claiming that some number of nonresident citizens are eligible for benefits under the Challenged Laws. MTD at 16-18. That argument is premised on Defendants' mistaken belief that Section 1623's reference to "a" U.S. citizen and does not mean "all." *Id.* at 17-18. Section 1623 makes clear, however, that illegal aliens cannot be eligible for in-state benefits "on the basis of residence" unless all U.S. citizens and nationals are eligible for that same benefit regardless of residence.

Defendants' argument has been rejected by other courts. *See, e.g.*, *Texas*, 181 F. 4th at 559; *Illinois*, 2026 WL 2137256, at *11. Section 1623 uses parallel language: it refers to "an alien" and then "a citizen." 8 U.S.C. § 1623. There is nothing in the statute to suggest Congress meant just a single alien or a single citizen, and indeed such a reading would eviscerate the entire purpose of the statute. It would also be inconsistent with the Dictionary Act, under which the singular is properly read to include the plural. 1 U.S.C. § 1 ("words importing the singular include and apply to several persons, parties, or things"); *Illinois*, 2026 WL 2137256, at *11.

As the Fifth Circuit correctly observed, "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency. U.S. citizens or nationals must be treated no worse

than illegal aliens." *Texas*, 181 F.4th at 559. That is because "Section 1623(a) is a categorical prohibition, whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit *vis-à-vis* a limited exception." *Id.* at 558; *see also Illinois*, 2026 WL 2137256, at *11 (holding that "[i]dentifying one, or even a few, citizens who might still qualify . . . does not satisfy the exception. It does not make the benefit available to U.S. citizens generally without regard to Illinois residency" and accepting such "narrow, hypothetical exceptions . . . would render the 'unless' clause meaningless surplusage"); *Kansas*, 2026 WL 2654069, at *5 ("Were the Court to accept that a single example (or even a small range of examples) is all that is required, the reading would eviscerate the prohibition, rendering it essentially toothless.").

Further undermining Defendants' interpretation, "Congress does not ordinarily enact self-defeating statutes." *Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*, 609 U.S. 108, 120 (2026); *accord Quarles v. United States*, 587 U.S. 645, 654 (2019) ("We should not lightly conclude that Congress enacted a self-defeating statute."); *Abramski v. United States*, 573 U.S. 169, 181 (2014) (rejecting interpretation that would render statute "utterly ineffectual"). There is no plausible theory under which Congress could have on the one hand wanted to make illegal aliens ineligible for state postsecondary education benefits on the basis of state residence, but on the other hand wished to restore that eligibility if a single nonresident U.S. citizen or national were made eligible for that benefit. Such a reading would also undermine Congress's stated objective of ensuring that "the availability of public benefits not constitute an incentive for immigration to the United States" and "to remove the incentive for illegal immigration provided by the availability

of public benefits." 8 U.S.C. § 1601(2)(B), (6). Congress could not have intended Section's 1623's broad prohibition to turn on whether a State identifies a single nonresident citizen eligible for the same benefit. *See Illinois*, 2026 WL 2137256, at *11 ("Permitting a state to evade preemption by pointing to narrow, hypothetical exceptions of this kind would render the 'unless' clause meaningless surplusage."). This Court should reject Defendants' reading, which is contrary to the statute's text and results in a nonsensical statute that is entirely self-defeating.

### D. Section 1621(d) independently preempts New Mexico Regulation 5.7.18.10(K).

Section 1621(d) provides that an illegal alien can be eligible for state or local public benefits only through "the enactment of a State law." 8 U.S.C. § 1621(d). The relevant question, therefore, is not whether Section 5.7.18.10(K) implements SB 582, whether New Mexico law authorized the Department to promulgate Section 5.7.18.10(K), or whether the regulation has the force and effect of law under state law. MTD at 18-19. Defendants' argument conflates the source of the Department's authority with the source of the alien's eligibility.[5] 8 U.S.C. § 1621(d).

"Enact" means to make law through the legislative process, not through agency rulemaking. *See* Enact, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/enact (last visited Nov. 17, 2026) ("to establish by legal and authoritative act" "*specifically*: to make into law" with an example "*enact* a bill"). SB 582 was enacted in 2005.

---

[5] Defendants also overread the Complaint's allegation that, "to the extent" Section 5.7.18.10(K) operates independently of SB 582, it violates Section 1621(d). Compl. ¶ 68. That allegation does not concede that the regulation is wholly dependent on SB 582 or immune from challenge if it implements the statute. Rather, it recognizes that Section 5.7.18.10(K) is a separate regulation promulgated by the Higher Education Department in 2007, two years after the Legislature enacted SB 582 in 2005. Whether the regulation merely implements SB 582 or independently confers eligibility, it remains true that the regulation itself was not enacted by the New Mexico Legislature.

Section 5.7.18.10(K) was promulgated by the Higher Education Department in 2007. The regulation is therefore not an "enactment of a State law" within the meaning of Section 1621(d). Whatever legal force the regulation carries as a matter of New Mexico administrative law, it was never enacted through the legislative process Congress specified. That alone is sufficient to bring it within Section 1621(d)'s preemptive scope.

Defendants' reliance on state law principles governing agency rulemaking is therefore misplaced. MTD at 18-19. Congress could have authorized States to confer benefits through regulations. It did not. Instead, Congress required eligibility to be "affirmatively provide[d] for" through "the enactment of a State law." 8 U.S.C. § 1621(d). If a regulation promulgated by an executive agency qualifies as an "enactment of a State law," then Congress's use of the word "enactment" does not work at all. The Court should avoid an interpretation that renders statutory language superfluous. The better reading, and the ordinary meaning of "enactment," is that Congress required authorization through the legislative process.

The District of Kentucky recently adopted that understanding, holding that a state regulation violated Section 1621(d) because it was not enacted by the legislature. Although regulations may have the force and effect of law under state law, "having the force and effect of law does not convert a regulation into a State law . . . nor is the distinction without any difference." *See Ky. Council*, 2026 WL 880597, at *10. The court therefore concluded that "Congress intended for States to act by law rather than regulation," when extending public benefits to illegal aliens under Section 1621(d). *Id.*

Because Section 5.7.18.10(K) was promulgated by a state agency rather than enacted by the New Mexico Legislature, it is not an "enactment of a State law" within the meaning of Section

1621(d). The regulation is therefore independently preempted. Defendants are not entitled to dismissal; summary judgment should be entered for the United States.

## II. Section 1623 Regulates Private Actors and Does Not Violate the Anticommandeering Doctrine.

Defendants mistakenly contend that Section 1623 lacks preemptive effect because it purportedly regulates States rather than private actors. MTD at 20-22. That argument rests on a fundamental misreading of the statute. Contrary to the claim that Section 1623's "only directive is aimed at state legislatures," MTD at 20, the text, structure, and purpose of Section 1623 demonstrate that it regulates the eligibility of individuals for public benefits. Accordingly, Defendants' anticommandeering defense fails as a matter of law.

As the Supreme Court explained in *Murphy*, a federal statute may preempt state law when it (1) represents a valid exercise of Congress's constitutional authority and (2) is "best read as one that regulates private actors." *Murphy*, 584 U.S. at 477. Defendants challenge only the second requirement. *See* MTD at 20-22. But Section 1623 plainly satisfies it.

Section 1623 provides that "an *alien* who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless" certain conditions are met. 8 U.S.C. § 1623(a) (emphasis added). The statute thus speaks directly to the legal eligibility of "an alien" to receive a benefit. It likewise prescribes the circumstances under which "a citizen or national of the United States" must be eligible for the same benefit. *Id.* In other words, Section 1623 establishes substantive rules governing when particular categories of individuals may receive postsecondary education benefits. The statute therefore regulates aliens and U.S. citizens and nationals by defining their eligibility for benefits.

It does not direct States to enact legislation, administer federal programs, or perform any affirmative governmental task.

Defendants' contrary reading improperly focuses on who administers the benefits rather than who is regulated by the statute. MTD at 21-22. Section 1623 changes the legal rights and eligibility of private individuals; any effect on state benefit programs follows from Congress's regulation of those private actors and does not convert the statute into a command to States. The courts that have considered Defendants' argument have uniformly rejected it. In *Illinois*, the court held that Section 1623 "regulates the eligibility of *individuals*, specifically individuals who are not lawfully present," and "does not dictate the content of state education policy or compel state officials to take any action." 2026 WL 2137256, at *7. The court therefore concluded that Section 1623 is "a valid preemption provision" because it "regulates the eligibility of private individuals for certain benefits in an area of federal authority" and "does not commandeer state legislatures or officials." *Id.* at *8. Likewise, the Fifth Circuit held that Section 1623 "declares a limitation on illegal eligibility itself and does not regulate states directly." *Texas*, 181 F.4th. at 559-60 (citation modified). And the District of Kansas observed that the statute, by its plain terms, applies to aliens rather than state legislatures. *Kansas*, 2026 WL 2654069, at *5 n.8.

Defendants' reliance on *Murphy* is therefore misplaced. MTD at 20-22. Far from supporting Defendants' position, *Murphy* expressly distinguished impermissible commands directed at States from ordinary preemption provisions that alter rights and obligations applicable to private parties. The Court explained that valid preemption occurs where "Congress enacts a law that imposes restrictions or confers rights on private actors, a state law confers rights or imposes restrictions that conflict with the federal law, and therefore the federal law takes precedence and

the state law is preempted." *Murphy*, 584 U.S. at 477. That is precisely what Section 1623 does. Congress imposed a restriction on the eligibility of illegal aliens to receive certain postsecondary education benefits. New Mexico seeks to confer those benefits despite that federal restriction. Under ordinary principles of preemption, federal law therefore controls.

The broader statutory context confirms this conclusion. Congress enacted Section 1623 as part of the PRWORA and IIRIRA, a comprehensive framework governing aliens' eligibility for public benefits. *See* 8 U.S.C. §§ 1601-1646. Those provisions regulate eligibility for federal, state, and local benefits, impose sponsorship-related obligations, and establish rules governing individual aliens. Congress expressly found that public benefit eligibility rules were necessary to reduce incentives for unlawful immigration and to ensure nationally uniform standards governing eligibility. *See id.* § 1601. Section 1623 fits squarely within that framework. Congress also sought to ensure that U.S. citizens are not disadvantaged relative to illegal aliens in access to postsecondary education benefits. *See id.* § 1623; *Texas*, 181 F.4th at 559 (Under Section 1623, "U.S. citizens or nationals must be treated no worse than illegal aliens.").

Indeed, "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992). Congress "has broad, undoubted power over the subject of immigration and the status of aliens" derived from the Naturalization Clause and the Federal Government's "inherent power as sovereign to control and conduct regulations with foreign nations." *Arizona*, 567 U.S. at 394-95 (citing *Toll*, 458 U.S. at 10). And "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo*, 430 U.S. at 792

(quoting *Oceanic Steam*, 214 U.S. at 339). This extends to the provision of public benefits to aliens. Section 1623 is squarely within Congress's plenary immigration authority.

Nor does *Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007), on which Defendants rely, support their position. MTD at 21. *Day* addressed whether Section 1623 creates an individual right enforceable through a private cause of action. *Day*, 500 F.3d at 1139. The court concluded it does not. *Id.* But the absence of a privately enforceable cause of action says nothing about whether Section 1623 regulates private actors for purposes of *Murphy*'s anticommandeering analysis. The relevant question under *Murphy* is whether the statute regulates private actors rather than issuing commands to States. Section 1623 plainly does the former.

In any event, the Supreme Court has emphasized that "[l]egislation that applies 'evenhandedly' to state and private actors does not typically implicate the Tenth Amendment." *Haaland v. Brackeen*, 599 U.S. 255, 283 (2023) (quoting *Murphy*, 584 U.S. at 475-76). Section 1623 does not single out States or state legislatures. *Id.* at 281-83. Rather, it establishes generally applicable eligibility rules governing postsecondary education benefits on the basis of residence. By its terms, Section 1623 limits the circumstances under which an illegal alien may be eligible for such benefits and identifies when a citizen or national must be eligible for the same benefits. It therefore reaches private actors while imposing no obligation on States to enact, administer, or enforce any law. *See* 8 U.S.C. § 1623.

Ultimately, Defendants seek to recast a federal statute governing individual eligibility for benefits as a command directed at state legislatures. *See* MTD at 22. The text, structure, purpose, and uniform weight of authority foreclose that argument. Because Section 1623 regulates private actors and constitutes a valid exercise of Congress's authority over immigration, Section 1623 is

a valid preemption provision. Accordingly, Defendants are not entitled to dismissal on anticommandeering grounds, and summary judgment should be entered for the United States.

## III. The United States is Entitled to an Injunction.

Because the Challenged Laws are unconstitutional and preempted, the Court must permanently enjoin Defendants and their successors and assigns, from enforcing the Challenged Laws and any laws that are substantially similar in scope, to the extent that they apply to "aliens not lawfully present" in the United States. *See Sec. USA Servs., LLC v. Invariant Corp.*, No. 1:20-cv-01100-KWR-KRS, 2023 WL 3868240, at *2 (D.N.M. June 7, 2023) (nonparty may be bound as successor in interest).

To establish entitlement to an injunction, the United States is required to show the traditional injunction factors, namely, that "(1) it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Irreparable harm often occurs when "the injury cannot be adequately atoned for in money." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (citation modified). The balance of harms and public interest factors "merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here the injunction factors are easily met.

First, the United States has suffered irreparable injury and there is no remedy at law. Control over immigration is both a sovereign prerogative and an enumerated power of Congress. *Arizona*, 567 U.S. at 394–95, 422, 436. Federalism as embodied in the Constitution requires that

certain powers belong to the national sovereign, while others are reserved to the states. *Murphy*, 584 U.S. at 470. Immigration belongs to the "national sovereign, not the 50 separate States." *Arizona*, 567 U.S. at 395. Yet, New Mexico seeks to upset this constitutional order by establishing its own immigration policy via state laws, in direct conflict with federal immigration law. New Mexico's frustration of that order causes irreparable harm to the United States. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 366–67 (1989) (suggesting that "irreparable injury may possibly be established . . . by a showing that the challenged state statute is 'flagrantly and patently violative . . . of the express constitutional prescription of the Supremacy Clause'" (quoting *Younger v. Harris*, 401 U.S. 37, 53-54 (1971))); *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (finding irreparable harm where Supremacy Clause is violated); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

The United States is also irreparably harmed because the Challenged Laws frustrate its immigration laws and policies. Congress, with Section 1623, chose to limit eligibility for postsecondary education benefits for aliens not lawfully present unless U.S. citizens and nationals of other states were equally eligible without regard to residence. That was in keeping with Congress's express statements of national immigration policy found in Section 1601. *See* 8 U.S.C. § 1601(2)(A) ("[A]liens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations."); *id.* § 1601(2)(B) ("[T]he availability of public benefits [should] not constitute an incentive for immigration to the United States."); *id.* § 1601(5)–(6) ("It is a compelling government interest to enact new rules for eligibility and sponsorship agreements

in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits."). Congress also instructed that "the immigration laws of the United States should be enforced vigorously and uniformly," *see* Immigration Reform and Control Act, Pub. L. No. 99–603, § 115(1), 100 Stat. 3359, 3384 (1986). Against this backdrop, President Trump issued Executive Order 14218, Ending Taxpayer Subsidization of Open Borders, ordering federal departments and agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens," and Executive Order 14287, Protecting American Communities From Criminal Aliens, directing federal officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens . . . ." Exec. Order No. 14218, at 10581; Exec. Order No. 14287, at 18762.

New Mexico has undermined Congress through the Challenged Laws. But individual states "may not pursue policies that undermine federal law." *Arizona*, 567 U.S. at 416. Without this Court's intervention, the Challenged Laws will impede the Federal Government's law and policy expressed in Sections 1623 and 1621, allowing the State to supplant the will of the Federal Sovereign in an area of law expressly assigned to the Federal Sovereign's political branches. Furthermore, absent an injunction, the Challenged Laws will invite other States to pass similar laws and regulations, resulting in a patchwork system of laws that would severely undermine the "integrated scheme of regulation created by Congress." *Arizona*, 567 U.S. at 402 (quoting *Wisc.*

*Dept. of Indus., Lab. and Hum. Rel. v. Gould Inc.*, 475 U.S. 282, 288-89 (1986)); *cf. CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 328 (3d Cir. 2025) ("Even a patchwork of such state laws 'would defeat all the ends of government.' States may not do that." (citation omitted)); *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (rejecting City's sovereignty argument as seeking to allow "states and localities to engage in passive resistance that frustrates federal programs"). The only remedy for such harms is to enjoin the laws; there is no adequate remedy at law.

Second, the balance of hardships and public interest tip decidedly in favor of the United States. The public has a strong interest in maintaining our system of federalism and the Constitutional lines drawn between federal and state power and has no interest in enforcing New Mexico's unconstitutional laws. *See, e.g. Colo. Christian Univ. v. Sebelius*, 51 F. Supp. 3d 1052, 1064 (D. Colo. 2014) (citing *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010) ("Generally, the public interest is served by enjoining the enforcement of a law that likely violates the Constitution.")). The public also has a strong interest in enforcing its own political choices represented through the immigration laws enacted by Congress. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d. 1211, 1221 (D.C. Cir. 1981) (collecting cases) ("[T]he public interest in enforcement of the immigration laws is significant."). To the extent New Mexicans disagree with federal immigration policy, they can address those concerns to their elected representatives in the U.S. Congress. Moreover, there is little hardship to Defendants because the Challenged Laws need only be enjoined as applied to illegal aliens. Thus, the United States is entitled to injunctive relief.

**CONCLUSION**

The Court should deny Defendants' motion to dismiss and grant summary judgment for the United States on all claims.

DATED: November 17, 2026

Respectfully Submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

CODY M. POPLIN
Deputy Assistant Attorney General

HILARY K. PERKINS
Director

JACQUELINE COLEMAN SNEAD
Deputy Director

/s/ Pooja Majmundar
POOJA MAJMUNDAR (DC Bar No. 1779930)
Trial Attorney
Enforcement & Affirmative Litigation Branch
U.S. Department of Justice
450 5th Street, NW
Washington, D.C. 20001
Telephone: (202) 598-0280
Email: Pooja.D.Majmundar@usdoj.gov

*Attorneys for the United States*

RYAN ELLISON
First Assistant United States Attorney
District of New Mexico

EMIL J. KIEHNE
Assistant United States Attorney
U.S. Attorney's Office
District of New Mexico
201 3rd Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
Emil.Kiehne@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on November 17, 2026, a true and correct copy of the foregoing was electronically filed and served on all parties of record via the Court's CM/ECF system.

*/s/ Pooja Majmundar*
Pooja Majmundar